**CENTURY INDEMNITY COMPANY,**
**Appellant,**

v.

**UNITED STATES CASUALTY COM-**
**PANY, Appellee.**

**No. 19420.**

United States Court of Appeals
Fifth Circuit.

July 25, 1962.

James A. Dixon, Miami, Fla., Dixon, DeJarnette, Bradford, Williams, McKay & Kimbrell, Miami, Fla., of counsel, for appellant.

David S. Batcheller, Miami, Fla., Smathers & Thompson, Miami, Fla., of counsel, for appellee.

Before TUTTLE, Chief Judge, and RIVES and JONES, Circuit Judges.

TUTTLE, Chief Judge.

This is an appeal from a final judgment by the trial court without a jury in which judgment was entered in favor of the appellee, United States Casualty Company, for contribution from Century

Indemnity Company on account of a public liability loss paid by United States Casualty Company.

The assureds under both policies were Daniel M. Gaines, sales manager for a furniture company in Chicago, Illinois, and Mrs. Gaines, his wife. Each owned a private automobile; Gaines was insured by United States Casualty Company; Mrs. Gaines was insured by Century Indemnity Co. Both policies were placed through Ben Jacobs Associates, insurance brokers in Chicago. This agency was designated by the insurance companies on the two policies for the giving of notice of accidents or claims under the policies.

Gaines was on a business trip in Florida, having flown to Miami, and having, upon his arrival, hired a Hertz automobile. This vehicle was insured in Continental Casualty Company with liability limits of $25,000. While driving this car, Gaines injured a pedestrian, a Mrs. Decker. He promptly reported the accident to Jacobs Associates, which reported the accident to United States Casualty Company but not to Century Indemnity Company. Since Century Indemnity Company's policy also protected Gaines as an additional insured to his wife, Jacobs Associates should, of course, have reported to Century.

Later, when suit papers were served on Mr. Gaines, they were promptly sent to Jacobs Associates. Again this agency transmitted the papers to United States Casualty Company, but not to Century. Defense of the suit was undertaken by United States Casualty Company and Continental Casualty Company on behalf of Hertz Corporation. Prior to the trial, Mrs. Decker's claim was settled, Continental contributing a small part and United States Casualty the rest. After the settlement had been made, Century Indemnity Company learned of the occurrence of the accident, the filing of the suit and the making of the settlement for the first time. In the present suit, United States Casualty seeks to recover from Century one-half of what it paid to Mrs. Decker. Century Indem-

nity's defense was based on two main grounds, other subsidiary defenses being disposed of by the treatment we give to the first of these two grounds.

The two principal grounds are: first, Century did not receive notice of the accident, and second, that the Hertz car was one furnished to Gaines by his employer for regular use, and that the accident was, therefore, excepted from the coverage of Century Indemnity Company's policy under the following exception:

"D. This insuring agreement does not apply:

1. To any automobile owned by or furnished for regular use to either the names insured or a member of the same household * * *."

The parties in this suit stipulated that the settlement made by United States Casualty and Continental was for a reasonable amount of money. The trial court found that Ben Jacobs and Associates was an authorized agent for the purpose of accepting notice of accidents and for the service of suit papers on behalf of both the United States Casualty Company and Century Indemnity Company. The court found that the two policies constituted co-insurance and entered judgment for one-half of the amount advanced in the settlement by United States Casualty Company.

Appellant's first contention in this Court is that although Jacobs and Associates properly acted as agent for both Casualty Companies, it ceased being an agent for the purpose of receiving notice on behalf of Century at the moment that it notified United States Casualty but failed to notify Century.

Appellant cites no authority for this novel proposition. This is understandable, for it is not only novel but utterly without logic or reason to support it. The proposition in effect is that although an assured is notified that he may safely and properly notify Ben Jacobs and Associates of the occurrence of an accident, Ben Jacobs and Associates lose their authority, as a matter of law, to bind

their principal, Century Indemnity Company, by failing in their duty to pass on the information to Century. Upon such a theory of termination of agency, the insured would have absolutely no protection by following explicitly the provisions of the policy as to notice.

The second contention made here by the appellant is that a proper construction of the exception to "the other car" coverage in the policy would deny to the assured protection while driving the Hertz car under both the United States Casualty Company's policy and the Century Indemnity policy. The theory of this contention is that since Gaines testified that when he was away from the vicinity of his home office and was unable to use a local salesman's automobile, he hired rented cars for use in the company's business, any rented car hired by him while away from home on a business trip fitted the description of "any automobile * * * furnished for regular use to [Gaines] * * *."

▪ Although the parties do not discuss the choice of law question, we think it clear that since this was an Illinois contract, the Illinois law would govern on the construction of the terms of the policies if Illinois law differs from that of the former. We do not find any case in Illinois that expressly covers a fact situation similar to that before us. On the other hand, we do find an Illinois case that indicates that an automobile, to be excluded under the above quoted exception, need not be a single particular automobile regularly furnished to the insured, but it may be one of a group, any one of which is available to the named insured. See Voelker v. Travelers Indemnity Co., 7 Cir., 260 F.2d 275, in which the court held that the regular use clause excluded coverage where the insured was driving a truck as a member of the National Guard while he was on summer maneuvers for two weeks. See also Rodenkirk, for Use of Deitenbach v. State Farm Insurance Company, 325 Ill.App. 421, 60 N.E.2d 269, where the Illinois court held that the regular use clause excluded coverage where the insured was

driving an automobile which had been placed at the disposal of his daughter and himself by the daughter's boyfriend when he entered the army. See also Farm Bureau Mut. Automobile Ins. Co. v. Boecher, Ohio App., 48 N.E.2d 895.

The Florida law seems in accord with that of Illinois. The construction of this provision of the policy that would consider one of several cars *regularly available* to an insured as included within the exception has been approved by the District Court of Appeals of the First District of Florida in the recent case of O'Brien v. Halifax Insurance Company of Massachusetts, 141 So.2d 307. In that case a city policeman was regularly required to use one of a fleet of four city police cars. He figured in an accident while driving one of the automobiles. The court held that even though this particular automobile may have been driven by him for the first time, "The jury as reasonable men could only have lawfully concluded therefrom that the automobile occupied by the plaintiff at the time of the accident was furnished for his regular use."

The case most similar to that before us is Continental Casualty Co. v. Suttenfield, 5 Cir., 236 F.2d 433, a case arising in the District Court in Texas. This court held that in that case coverage was not excluded where the insured regularly used a company car which itself was rented on a lease basis from an automobile renting company, but who, at the time of the accident giving rise to the claim, was away from his home office and was driving a Hertz rental car. It appeared from the evidence in that case that Suttenfield had used a Hertz rental car eight times within the particular year in question. The language of the exclusion in that case was even more favorable to the insurance carrier than that before this court. It provided that the insuring agreement did not apply: "To any automobile owned by, *hired as part of a frequent use of hired automobiles by*, or furnished for regular use to the named insured." (Emphasis added)

This court held in the Suttenfield case that the use by Suttenfield of the rental car at the home office, rented for his regular use by the company, of which he had custody as his regularly assigned car, should not have been reckoned in determining whether the use of the Hertz car was "a part of a frequent use of hired automobiles." We also stated "the district court found, and we agree, that the uses by Suttenfield of hired cars, other than of the Robertson car, would not constitute the Hertz rental on the day of the accident a part of a frequent use." In finding in favor of Suttenfield and against the insurance company, we, of course, also rejected the contention that the eight rentals from the Hertz company during the year constituted such "frequent use as would make these rentals alone sufficient to exclude the coverage from the automobile in use by Suttenfield at the time of the accident." We think this is equally the law of the state of Illinois.

There are no facts in this record to indicate that during the year in which Gaines figured in the accident in Miami, he had rented a rental automobile such as the Hertz car as much as a single previous time. It is undisputed that he had not been in Miami before for several years. There is no proof that he had rented a Hertz car or any other car while away from his main office, other than the following testimony:

"Q. And as sales manager, you had considerable traveling to do, I suppose, around the country?

"A. Very frequently.

"Q. Well, about how much of the time would you be traveling as sales manager for Saginaw?

"A. Oh, I would say three to four months of the year.

"Q. Would you be out of the main office at least doing sales work fifty per cent or two-thirds of the time?

"A. Fifty per cent of the time, yes.

"Q. Sir, would it be your custom when you got to a strange town or out of the main area to rent a car if you had no salesmen in the area whose car you could use?

"A. I would."

The trial court made no findings of fact with respect to the number of times Mr. Gaines had rented a car of any type during the current or any prior year. We think that there was not sufficient evidence on which it could adequately base any such findings. Therefore, whatever might be the rule if it were shown that he did actually "regularly" rent automobiles in excess of the regularity shown in the case of Continental Casualty Co. v. Suttenfield, supra, there was here simply not enough evidence to warrant a finding that the automobile which he was driving when he injured Mrs. Decker was one "furnished for regular use to" Gaines.

The judgment is

Affirmed.