94

THE OHIO CASUALTY INS. CO., APPELLEE, *v.* TRAVELERS INDEMNITY CO., APPELLANT; ANDREWS ET AL., APPELLEES.

[Cite as Ohio Cas. Ins. Co. v. Travelers Indem. Co. (1975), 42 Ohio St. 2d 94.]

(No. 74-318—Decided April 16, 1975.)

*Hesser, McGraw, Armstrong & Higgins Co., L. P. A.,*
Mr. *Robert F. Hesser* and Mr. *Richard J. Disantis,* for
plaintiff-appellee.

Messrs. *Arter & Hadden* and Mr. *Harry T. Quick,* for
appellant.

Messrs. *Spangenberg, Shibley, Traci & Lancione,* and
Mr. *Norman Shibley,* for defendant-appellees.

HERBERT, J. This appeal involves the proper meaning
of the term "regular use," as used in appellant's garage
insurance policy issued to Greenwood Auto.

Appellant contends that this court should be guided
by past decisions in which a use was found to be "regular"
if it was frequent, steady or constant over a substantial
period of time. See *Kenney* v. *Employers' Liability As-
surance Corp.* (1966), 5 Ohio St. 2d 131, 214 N. E. 2d 219;
*Oberdier* v. *Kennedy Ford* (1970), 23 Ohio App. 2d 168,
261 N. E. 2d 348; *Motorists Mutual Ins. Co.* v. *Sandford*
(1966), 8 Ohio App. 2d 259, 221 N. E. 2d 596. However, the
above cases dealt with the phrase as used in a family in-
surance policy. It is our conclusion that a like criterion
would be improper when construing the meaning of the
term in a garage insurance policy.

Family automobile policies often contain a clause excluding coverage for sums the insured is obligated to pay which result from driving a non-owned vehicle furnished to him for his regular use.[1] One purpose of such an exclusion is to protect the company from a situation where an insured purchases one automobile, acquires liability insurance thereon, and then uses that protection while continually operating non-owned vehicles for which no premium has been paid.[2] *Lumbermens Mut. Cas. Co.* v. *Pulsifer* (Me. S. D. 1941), 41 F. Supp. 249; *George B. Wallace Co.* v. *State Farm Mut. Auto. Ins. Co.* (1960), 220 Ore. 520, 349 P. 2d 789. Additionally, however, it is known that insureds often drive non-owned vehicles on trips where driving chores are shared, or around town for short trips in a friend's or relative's car. Hence, the construction placed upon the term ''regular use'' in family policies is quite favorable to the insured. Although some benefit also derives to the insurer, the affording of protection to the insured during occasional or incidental use of non-owned cars is significant.[3]

---

[1] In the present case, the family policy issued by Ohio Casualty to Thomas Berry, Jr.'s father, in part, provides:

"Part I—Liability

"* * * To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

"* * * bodily injury, sickness or disease * * *;

"* * *

"* * * arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile * * *.

"* * *

"Definitions—Under Part I:

"* * *

"* * * *'non-owned automobile'* means an automobile or trailer not *owned or furnished for the regular use of either the named insured or* *any relative* * * *." (Emphasis added.)

[2] It was agreed during oral argument that although no premiums are paid for "regular use" coverage in a family policy, premiums are paid for such coverage in a garage policy.

[3] A contract of insurance which is ambiguous is generally construed in favor of the insured. *Allstate Ins. Co.* v. *Boggs* (1971), 27 Ohio St. 2d 216, 271 N. E. 2d 855; *Butche* v. *Ohio Cas. Ins. Co.* (1962), 174 Ohio St. 144, 187 N. E. 2d 20; *Home Indemnity Co.* v. *Plymouth* (1945), 146

The purpose of the "regular use" coverage in a garage insurance policy differs from the purpose of such coverage in a family policy. The garage type of policy is obtained, in part, by an automobile agency, service station or repair shop to provide coverage for those vehicles used in their business. In a business, such as a repair garage or agency, it is not only foreseeable, but common practice that automobiles are loaned to customers, or potential custom ers. The insurer offers the "regular use" provision in a garage policy to implement the intent to protect the insured from liability in circumstances involving a loaned vehicle. This interpretation is also consistent with the risks the insurer should be expected to assume, since in a garage policy, unlike a family policy, the insured pays a specific premium for the "regular use" coverage. Additionally, the ambiguity of the policy supports a construction favorable to the insured.

In light of the above factors, we construe the term "regular use," in this garage policy, to provide coverage of loaned automobiles when used within the scope of the permission given by the insured.[4] Where a garage liability policy provides coverage for automobiles "furnished for the use of * * * any person or organization to whom the named insured furnishes automobiles for their regular use," "regular use" is that use of the vehicle which is usual and customary for the person for whose use the automobile was furnished. This meaning allows for coverage the in-

---

Ohio St. 96, 64 N. E. 2d 248. The College Dictionary, Random House (1973), defines "regular" as meaning both "usual, normal, customary," and "recurring at fixed or uniform intervals."

[4]Appellant's policy, in part, states:

"Persons insured—Each of the following is an insured under Part I, except as provided below:

"* * *

"(4) With respect to an automobile to which the insurance applies under paragraph 1(b) of the Automobile Hazards, any person while using such automobile with the permission of the person or organization to whom such automobile is furnished, *provided such person's actual operation * * * is within the scope of such permission.*" (Emphasis added.)

sured reasonably expects under the policy, and is consistent with the limitation on "regular use" coverage in appellant's policy.

In the case at bar, Greenwood Auto placed no conditions on the use that Thomas Berry, Jr., was to make of the automobile during the time it was loaned to him. The car was loaned to Berry for his usual and customary use and, therefore, the insured furnished the loaner for Berry's regular use within the terms of the policy. The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., STERN and CELEBREZZE, JJ., concur. CORRIGAN, W. BROWN and P. BROWN, JJ., dissent.

PAUL W. BROWN, J., dissenting. To sustain its allegation that Thomas Berry, Jr., is primarily covered by a garage liability policy issued to Greenwood Auto, Inc., by the Travelers Indemnity Company, appellee, The Ohio Casualty Insurance Company, relies upon Sections 1(a) and 1(b) of the "automobile hazards" portion of that policy.

Section 1(a) provides coverage for any automobile used for garage operations; for any automobile, principally used in garage operations, which is occasionally used for other business purposes; and for any automobile, principally used in garage operations, which is used for nonbusiness purposes. The parties agree that Section 1(a) under proper circumstances covers, among other things, one-shot, short-term "loaners," including, but not limited to, automobiles loaned to persons whose automobiles are being repaired.

However, appellee offered no evidence which indicates that the 1968 Javelin was loaned to Thomas Berry, Jr., in the course of Greenwood's garage operations, or that the automobile, whether loaned for a business or nonbusiness purpose, was "used principally in garage operations." Rather, appellee relies on ten meager stipulations, none of which present facts sufficient to constitute such a showing.

Section 1(b) of the policy provides coverage for any automobile owned by the named insured, and furnished for the use of "(i) the named insured, a partner therein, an executive officer thereof or, if a resident of the same household, the spouse of any of them, or (ii) any other person or organization to whom the named insured furnishes automobiles for their regular use." Subsection (i) contemplates automobiles used by the corporation's owners and executives, and their wives. Subsection (ii) contemplates automobiles furnished to individuals and organizations for their consistent use over the long-term. Common examples include automobiles furnished to company salesmen, public officials, charitable organizations, and public schools for driver-education programs.

Clearly, the one-shot, two-day loan in the present case was not the loan of an automobile "furnished for regular use," as that technical language has been defined in past Ohio insurance cases. See *Kenney* v. *Employers' Liability Assurance Corp.* (1966), 5 Ohio St. 2d 131; *Oberdier* v. *Kennedy Ford* (1970), 23 Ohio App. 2d 168; *Motorists Mutual Ins. Co.* v. *Sandford* (1966), 8 Ohio App. 2d 259. Regular use, as the majority notes, requires frequent, steady, or constant use over a substantial period of time. Only by persuading the majority to redefine this concept in the context of a garage policy does appellee limit its liability to providing "excess" coverage.

The upshot, of course, is that Ohio now defines "regular use" differently when used in a garage liability policy than when used in the standard family automobile policy. Absent policy language justifying this difference, it cannot be rationalized or justified. Further, the majority's definition of "regular use" reduces the garage liability policy herein to an absurdity, providing coverage for short-term loans where none was contemplated, reducing technical language to redundant verbiage.

Many courts have held that "regular use" is not ambiguous, and hence not subject to construction. See *Liggett* v. *Fahey* (1972), 30 N. Y. 2d 680, 283 N. E. 2d 610;

*Kern* v. *Liberty Mutual Ins. Co.* (C. A. 8, 1968), 398 F. 2d 958; *Teixeira* v. *Globe Indemnity Co.* (C. A. 9, 1965), 349 F. 2d 502; *Blackwell* v. *United States* (C. A. 5, 1963), 321 F. 2d 96; *Century Indemnity Co.* v. *United States Casualty Co.* (C. A. 5, 1962), 306 F. 2d 956. Indeed, there can be no ambiguity, within the meaning of the rule requiring strict construction against an insured, once a term has been judicially defined. I Couch on Insurance 2d 824, Section 15:83; 30 Ohio Jurisprudence 2d 231, Insurance, Section 218. For this reason, we held in *Kenney* v. *Employers' Liability Assurance Corp., supra* (5 Ohio St. 2d 131), at page 134, that application of "regular use" language is a factual problem, not a definitional one. Our inquiry is limited to determining whether specific facts and circumstances constitute "regular use," as that phrase has been heretofore defined.

A single period of use consisting of two days, the purpose of which is unexplained, can not constitute a regular use, under either a standard automobile or a garage liability policy.

Nor can I agree, as the majority contends, that "the insurer offers the 'regular use' provision in a garage policy to implement the intent to protect the insured from liability in circumstances involving a loaned vehicle." No liability of the insured can ever be predicated upon the mere loan of a vehicle. Coverage (which alone is in question here) must be grounded upon policy language.

I find judicial tampering with the unambiguous terms of an insurance policy no less onerous than the "judicial legislating" this court so often deplores. The judgment of the Court of Appeals should be reversed.

CORRIGAN and W. BROWN, JJ., concur in the foregoing dissenting opinion.