JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant Nationwide Mutual Insurance Company ("Nationwide") appeals from a summary judgment entered in favor of plaintiffs-appellees Jeffrey and Michelle Hostottle[1] on a question of whether a "regular use" exclusion in an insurance policy barred uninsured motorist coverage. The trial court found that Nationwide's "regular use" policy exclusion to uninsured/underinsured motorist coverage did not apply to the accident giving rise to Hostottle's claims.
 {¶ 2} Pursuant to Civ.R. 56(C), summary judgment may issue when, after construing the evidence most strongly in favor of the nonmoving party, the court finds that there is no genuine issue of material fact and reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made.
 {¶ 3} Hostottle and Nationwide filed cross-motions for summary judgment. Both sides agreed that the pertinent facts were undisputed and that each movant was entitled to judgment as a matter of law. Those undisputed facts show that Hostottle worked as a police officer for the city of Cleveland Division of Public Utilities ("division"). The division has facilities located throughout the city (Hostottle said that as of his last shift, he saw 125 properties listed on the division roster) and its police officers are required to answer emergency calls at these facilities by using *Page 4 
a marked police car from the division motor pool. Hostottle estimated that there were 12-15 cars in the motor pool, although only one police car would be waiting when he began his tour of duty. He used a police car nearly every day, estimating that there were only four to five times per month when he would not use a car. He said that the specific vehicle he drove on any given shift would change "all the time" and agreed that it was "entirely random" which vehicle might be made available to him.
 {¶ 4} On the date of his accident, Hostottle was returning to his post after responding to an emergency call when he was negligently struck by another car. At the time, he was driving a city-owned Jeep sport utility vehicle. Hostottle said that the Jeep had been specifically assigned to the chief of police for the division. Hostottle had driven this particular vehicle "a couple of times" prior to the accident.
 {¶ 5} Hostottle suffered very serious injuries. Neither the tortfeasor nor the owner of the car driven by the tortfeasor carried automobile insurance, so Hostottle filed an uninsured motorist claim with Nationwide, the company that insured his personal vehicles.[2]
Nationwide rejected Hostottle's application for coverage, citing to a "regular use" exclusion in the policy which stated: *Page 5 
 {¶ 6} "We will also pay compensatory damages, including derivative claims, that other natural persons are legally entitled to recover from the owner or driver of an uninsured motor vehicle under the tort law of the state where the motor vehicle accident occurred and resulting from the motor vehicle accident if such other persons suffer bodilyinjury while occupying:
 {¶ 7}
 {¶ 8} "4. Any other motor vehicle while it is being driven byyou or a relative. However, the vehicle must not be:
 {¶ 9} "a) owned by you or a relative; or
 {¶ 10} "b) furnished or available for you or a relative for regular use." (Emphasis sic.)
 {¶ 11} Nationwide argued that the regular use exclusion applied because at the time of the accident, Hostottle had been driving a city-owned vehicle that had been provided for his regular use as a police officer. Hostottle argued that the city-owned vehicle he drove had been assigned almost exclusively to the chief of police of the Division of Public Utilities, so Hostottle did not regularly use that particular vehicle.
 {¶ 12} "The validity of the [regular use] exclusion derives from the fact that the main risk insured is the ownership/operation of the designated vehicle." Smetak, *Page 6 
Underinsured Motorist Coverage in Minnesota: Old Precedents in a New Era (1998), 24 Wm. Mitchell L.R. 857, 892.
 {¶ 13} In Ohio Cas. Ins. Co. v. Travelers Indemn. (1975),42 Ohio St.2d 94, 97, the supreme court stated the purpose behind regular use exclusions:
 {¶ 14} "One purpose of such an exclusion is to protect the company from a situation where an insured purchases one automobile, acquires liability insurance thereon, and then uses that protection while continually operating non-owned vehicles for which no premium has been paid. Lumbermens Mut. Cas. Co. v. Pulsifer (Me.S.D. 1941),41 F.Supp. 249; George B. Wallace Co. v. State Farm Mut. Auto. Ins. Co. (1960), 220 Ore. 520, 349 P.2d 789."
 {¶ 15} The term "regular use," as used in motor vehicle insurance policies, has been construed to mean "frequent, steady, constant or systematic." Sanderson v. Ohio Edison Co., 69 Ohio St.3d 582, 589,1994-Ohio-379. "In order to be excluded under this exclusionary clause, an automobile need not be a single particular automobile regularly furnished to the named insured. Thus it is well settled that an automobile will be excluded under such policy provisions although it is only one of a group of automobiles from which an automobile is regularly furnished to the named insured by his employer. Kenney v. Employer'sLiab. Assur Corp. (1965), 5 Ohio St.2d 131, 134. For example, inKenney, the court found that the regular use exclusion applied to a police officer who used police motor vehicles on 122 of 164 working days. *Page 7 
 {¶ 16} In Sanderson, the supreme court distinguished Kenney on its facts to hold that a utility company worker who only used a company truck "sporadically, when he was called upon to act as foreman in the absence of the regular foreman," did not regularly use the truck in a manner that would allow the regular use exclusion of an insurance policy to bar recovery of benefits. Sanderson, 69 Ohio St.3d at 590. This distinction was premised on the total number of times that the insured used any vehicle, not just the particular vehicle involved in the accident. Viewed in this manner, Sanderson's distinguishment is consistent with the Kenney statement that "an automobile need not be a single particular automobile regularly furnished to the named insured."Kenney, 5 Ohio St.2d at 134. Sanderson made no mention of the use of any "particular" vehicle, even though the facts stated in the case suggest that it involved a single vehicle.[3] Instead, Sanderson focused on the total number of times that a vehicle had been driven in the course and scope of employment to determine whether use had been regular.
 {¶ 17} We have followed Kenney in virtually identical factual circumstances to those presented in this case. In Brill v. ProgressiveIns. Co., Cuyahoga App. No. 84665, 2005-Ohio-626, a police officer was injured while driving an assigned zone car. The evidence showed that the officer had driven 10 to 15 different zone cars *Page 8 
while on the force, but that he and his partner routinely drove car no. 112. That car, however, had been out of service on the day of the accident and the officer had been driving another car. The officer made a claim for uninsured motorist benefits, but the insurer denied the claim citing to a regular use exclusion similar to that in the Nationwide policy. The court granted summary judgment to the insurer. On appeal, we rejected Brill's argument that the vehicle he had been driving at the time of the accident had not been provided for his regular use because it was not his ordinarily assigned vehicle. We stated at ¶ 23:
 {¶ 18} "Furthermore, zone car 112-B was one of several zone cars available to [Brill] for his regular use as a police officer in the city's First District. [Brills'] regular job duties involved occupying one of the several vehicles in the First District's pool of zone cars. Therefore [Brill], like the plaintiff in Kenney, was injured while occupying a motor vehicle furnished to, or available for, his regular use." Accord Fleetwood v. Doe, Cuyahoga App. No. 80877, 2002-Ohio-3907 (rejecting bus driver's claim that regular use exclusion did not apply because he was randomly assigned buses to drive).
 {¶ 19} The facts of this case are very similar to Brill. Aside from the very rare occasion when all the cars were under repair, on nearly any given work day, the division provided a car for Hostottle to use. He had no control over which particular car he drove, and stated that the specific car would change "all the time." His duties required him to use a car so frequently that, by his own reckoning, there might only *Page 9 
be four to five times per month when he did not use a car. These undisputed facts show that at the time of the accident, Hostottle had been driving a vehicle that had been furnished for his regular use.
 {¶ 20} Hostottle repeatedly maintains that he did not regularly use the car he drove at the time of the accident because it was assigned primarily to the division police chief and Hostottle only drove that car a "couple" of times prior to the accident.[4] This argument incorrectly places emphasis on the particular vehicle driven, in contravention of the clear statement to the contrary in Kenney.
Hostottle testified at deposition that the chief "was waiting on a car. The car came. It wasn't done. He released his Jeep before the car was done. He was using the Jeep during the day and we were using it at night. It was crazy." This testimony undeniably shows that the Jeep driven primarily by the chief had been "released" into the division's fleet of cars, to be driven during the day by the chief and at night by officers like Hostottle.
 {¶ 21} Apart from this testimony, the evidence showed that the Jeep in question had been part of the fleet. Hostottle testified at deposition that the Jeep *Page 10 
had been assigned to him for his use on two occasions prior to the accident. While Hostottle did not testify to the number of times that other officers in the division had used the chief's vehicle, it is unreasonable to infer that the two prior times in which he had been assigned the Jeep were the only times that it had been assigned to any of the division police officers. In any event, even without such testimony, the random assignment of the Jeep for the third time in Hostottle's memory showed that it had been used as a fleet vehicle even before the chief's new vehicle had been ready.
 {¶ 22} In the absence of any genuine issue of material fact, we find as a matter of law that the city-owned car that Hostottle drove at the time of the accident was provided for his "regular use" as that term is defined in Sanderson. The court erred by denying Nationwide's motion for summary judgment and granting Hostottle's motion for summary judgment. The assigned error is sustained.
Judgment reversed and remanded with instructions to enter final judgment for Nationwide.
It is, therefore, ordered that said appellant Nationwide Mutual Insurance Company recover of said appellees its costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 11 
MELODY J. STEWART, JUDGE
FRANK D. CELEBREZZE, JR., A.J., and COLLEEN CONWAY COONEY, J., CONCUR
[1] Michelle Hostottle's claims are derivative consortium claims. For simplicity, we shall use the singular form of "Hostottle" unless otherwise noted.
[2] The city of Cleveland is self-insured; therefore, it is not required to provide uninsured motorist coverage. See R.C. 3937.19(B). The driver of the car pleaded guilty to aggravated vehicular assault and was incarcerated at the time this action was filed.
[3] Not only did the supreme court make no mention of a fleet or pool of available trucks, it wrote "Thomas Allen took the Ohio Edison truck home only when he was acting as temporary foreman." Sanderson,69 Ohio St.2d at 589. The use of the singular noun "truck" implies that only one truck had been available in that case.
[4] Hostottle makes a brief argument that the precise wording of the insurance policy refers to "a" vehicle — not "any" vehicle — and that the proper factual inquiry is whether the specific vehicle he had been operating at the time of his accident was "available" for his regular use. Kenney, however, used virtually identical language to the policy at issue in this case by referring to "an automobile" furnished for regular use. Kenney, 5 Ohio St.2d at 131. As noted, Kenney rejected an analysis in which construction of "regular use" would apply to a particular automobile. *Page 1