[Cite as *Barnes v. Thompson*, 2013-Ohio-5886.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| TERRY L. BARNES, | ) | |
| | ) | CASE NO. 12 CO 26 |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| REBECCA L. THOMPSON, et al., | ) | |
| | ) | |
| DEFENDANTS-APPELLEES. | ) | |


CHARACTER OF PROCEEDINGS:       Civil Appeal from Common Pleas
                                Court, Case No. 11 CV 213.


JUDGMENT:                       Affirmed.


APPEARANCES:
For Plaintiff-Appellant:        Attorney Martin White
                                Martin F. White Co., LPA
                                156 Park Avenue
                                P.O. Box 1150
                                Warren, OH 44482-1150


For Defendants-Appellees:       Attorney Joseph Wantz
                                Williams, Moliterno & Scully Co. LPA
                                2241 Pinnacle Parkway
                                Twinsburg, OH 44087


JUDGES:
Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Joseph J. Vukovich


                                Dated: December 30, 2013

DeGenaro, P.J.

{¶1}    Plaintiff-Appellant Terry L. Barnes, appeals the June 14, 2012 judgment of the Columbiana County Court of Common Pleas granting summary judgment in favor of Defendant-Appellee State Farm Mutual Automobile Insurance Company, in an uninsured/underinsured-motorist insurance case.  On appeal, Barnes asserts that the trial court erred by determining that the vehicle furnished to Barnes as part of his employment as a part-time police officer was available for his "regular use," and thus excluded from UM coverage under the State Farm policy he had for his personal vehicle.

{¶2}    Upon review, Barnes' assignment of error is meritless.  The Ohio Supreme Court has held that "regular use" means use that is "frequent, steady, constant or systematic."  Barnes worked part-time as a patrolman, during which time he always had access to the fleet of police vehicles.  This constitutes regular use as a matter of law.  Thus, the trial court properly granted summary judgment in favor of State Farm and its judgment is affirmed.

## Facts and Procedural History

{¶3}    This matter arises out of a motor vehicle collision that occurred on April 4, 2009, while Barnes was working as a Leetonia Village Police Officer, and driving a police cruiser owned by the Village of Leetonia.  At the time, Barnes was working one day per week for the Village as a patrolman; during his shifts he would always drive a police cruiser.  He never drove the cruisers for his personal use.  The department had three police cruisers, with license plates LPD 1, LPD 2 and LPD3, respectively.  Barnes testified that he was usually assigned to operate the LPD 3 vehicle, however, on the day of the accident, that vehicle was not in service, and therefore, Barnes operated the cruiser with license plate LPD 2.

{¶4}    The accident occurred while Barnes was in pursuit of an erratic driver, Rebecca Thompson.  Thompson was intoxicated, lost control of her vehicle and struck the police cruiser that Barnes was driving, injuring Barnes.  Barnes' medical costs from the accident were covered by workers' compensation.

{¶5}    Thompson had no insurance on her vehicle.  The police cruiser did not have UM/UIM coverage.  Thompson had a policy for his personal vehicle through State Farm

that did include UM/UIM coverage, however, the police cruiser was not listed as a covered vehicle under the State Farm policy. The declarations page of the policy provides that the policy was issued to Terry L. Barnes for coverage on a 1999 Ford Explorer Sport Wagon. Uninsured motor vehicle coverage is provided pursuant to an endorsement, but provides the following exclusion to coverage:

> THERE IS NO COVERAGE:
> * * *
> 2.    For damages arising out of and due to bodily injury to any insured:
> a.    WHILE ANY INSURED IS OPERATING OR OCCUPYING A MOTOR VEHICLE OWNED BY, LEASED TO, FURNISHED TO, OR AVAILABLE FOR THE REGULAR USE OF YOU, YOUR SPOUSE, OR ANY RELATIVE IF THAT MOTOR VEHICLE IS NOT INSURED FOR THIS COVERAGE UNDER THIS POLICY.

**{¶6}** On March 11, 2011, Barnes filed a Complaint, alleging a claim against Thompson for negligence and against State Farm for UM benefits; State Farm answered. The trial court eventually granted default judgment in favor of Barnes and against Thompson in the amount of $150,000.

**{¶7}** On April 30, 2012, State Farm filed a motion for summary judgment asserting that Barnes was not entitled to uninsured motorist benefits under the State Farm policy because he was operating a vehicle that he did not own, was not identified as a covered vehicle under his policy, and was available for his regular use. Attached to the motion were: Barnes' deposition transcript; the subject State Farm policy; and an affidavit from State Farm Underwriting Team Manager Gloria Pack, certifying the policy. Barnes opposed the motion, asserting reasonable minds could differ as to whether the vehicle he was operating was available for his regular use. He attached his own affidavit in support. On June 14, 2012, the trial court granted State Farm's motion for summary judgment and dismissed the complaint.

**Regular Use Exclusion**

{¶8} In his sole assignment of error, Barnes asserts:

{¶9} "The trial court committed reversible error in granting the motion of Appellee, State Farm Mutual Automobile Insurance Company, for summary judgment denying uninsured motorist coverage. (T.d. 52, 6/14/12 Judgment Entry)"

{¶10} An appellate court reviews a trial court's summary judgment decision de novo, applying the same standard used by the trial court. *Ohio Govt. Risk Mgt. Plan v. Harrison*, 115 Ohio St.3d 241, 2007-Ohio-4948, 874 N.E.2d 1155, ¶5. A motion for summary judgment is properly granted if the court, viewing the evidence in a light most favorable to the party against whom the motion is made, determines that: (1) there are no genuine issues as to any material facts; (2) the movant is entitled to a judgment as a matter of law; and (3) the evidence is such that reasonable minds can come to but one conclusion and that conclusion is adverse to the opposing party. Civ.R. 56(C); *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47, ¶10. Only the substantive law applicable to a case will identify what constitutes a material issue, and only the disagreements "over facts that might affect the outcome of the suit under the governing law" will prevent summary judgment. *Byrd* at ¶12, citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 662 N.E.2d 264 (1996). The nonmoving party has the reciprocal burden of specificity and cannot rest on the mere allegations or denials in the pleadings. *Id.* at 293.

{¶11} Barnes asserts there is a genuine issue of material fact concerning whether the police cruiser furnished to him as part of his employment with Leetonia was available for his regular use, and thus excluded from UM coverage under the State Farm policy he had for his personal vehicle. State Farm counters the trial court correctly determined that as a matter of law, Barnes' use of the vehicle constituted regular use.

{¶12} The State Farm policy provides the following exclusion to UM/UIM

coverage, language similar to that in Ohio's UM/UIM statute, R.C. 3937.18(I), and is thus permissible by law:

> THERE IS NO COVERAGE:
>
> * * *
>
> 2. For damages arising out of and due to bodily injury to any insured:
>
> a. WHILE ANY INSURED IS OPERATING OR OCCUPYING A MOTOR VEHICLE OWNED BY, LEASED TO, FURNISHED TO, OR AVAILABLE FOR THE REGULAR USE OF YOU, YOUR SPOUSE, OR ANY RELATIVE IF THAT MOTOR VEHICLE IS NOT INSURED FOR THIS COVERAGE UNDER THIS POLICY." (MSJ, Ex. 1.)

{¶13} Regular use exclusions are common in automobile insurance polices. One purpose of the exclusion "is to protect the [insurance] company from a situation where an insured purchases one automobile, acquires * * * insurance thereon, and then uses that protection [while] continually operating non-owned vehicles for which no premium has been paid." *Ohio Cas. Ins. Co. v. Travelers Indemn. Co.*, 42 Ohio St.2d 94, 97, 326 N.E.2d 263 (1975).

{¶14} The phrase "regular use" in an automobile liability insurance policy is unambiguous and to be given its ordinary meaning. *Beverly v. Midwestern Indemn. Co.*, 60 Ohio App.3d 139, 141, 573 N.E.2d 1221 (1989). Regular use refers to use that is "frequent, steady, constant or systematic." *Sanderson v. Ohio Edison Co.*, 69 Ohio St.3d 582, 589, 635 N.E.2d 19 (1994); *Ohio Cas. Ins. Co.* at 100. Determination of regular use is a fact-specific inquiry to be determined on a case-by-case basis. *Ohio Cas. Ins. Co.* at 101.

{¶15} The Ohio Supreme Court has examined regular use exclusions in automobile insurance policies on several occasions. Two cases are especially pertinent to this case, as they involve vehicles furnished to an employee in connection with his employment. In *Kenney v. Emps.' Liab. Assur. Corp.*, 5 Ohio St.2d 131, 214 N.E.2d 219 (1966), a police officer was injured in an auto collision while occupying his police cruiser

and sought recovery for medical payments from his family automobile policy. *Id.* The policy contained a regular use exclusion similar to one in the present case, except it pertained to the med-pay claims as opposed to UIM/UM claims. *Id.* The Supreme Court concluded that the officer could not recover from his personal insurer because "[i]n our opinion, where a city police officer working on general police duty is assigned to work in a police motor vehicle on 122 of 164 working days, such a vehicle is as a matter of law 'an automobile furnished for' his 'regular use' within the meaning of such policy provisions." *Id.* at 135.

{¶16} On the other end of the spectrum is *Sanderson,* 69 Ohio St.3d 582. Sanderson was injured when she was hit by a truck driven by a ten-year-old child. The truck had been provided to the child's father, Thomas Allen, by his employer Ohio Edison. *Id.* at 583. Sanderson filed suit against the parents. *Id.* The Allens admitted liability and Sanderson was awarded damages. *Id.* Sanderson filed suit against Ohio Edison and its insurance provider, Ohio Farmers Insurance, for satisfaction of the judgment. *Id.* The insurance company argued that no coverage existed because the vehicle was furnished for Allen's regular use. *Id.* at 589.

{¶17} Distinguishing the case from *Kenney*, the court concluded:

Thomas Allen took the Ohio Edison truck home only when he was acting as temporary foreman. A temporary foreman was designated by Ohio Edison only when the regular foreman was unable to work. Thomas Allen testified that he had possession of the Ohio Edison truck only eight to ten times over the course of one year. We do not believe that this occasional possession of the Ohio Edison truck constitutes frequent, steady, constant or systematic use. We hold that an automobile is not furnished for the regular use of an insured where the insured has only occasional possession of the automobile, which does not exceed ten occasions in one year.

*Sanderson*, 69 Ohio St.3d at 589-590.

{¶18} Barnes asserts there is a genuine issue of material fact concerning whether

the police vehicle was available for his regular use. He claims his use was sporadic and infrequent, similar to that in *Sanderson*. Barnes points to his affidavit in support of this argument. However, the affidavit is inconsistent with Barnes' prior deposition testimony. In *Byrd, supra*, 110 Ohio St.3d 24, the Ohio Supreme Court held that "[a]n affidavit of a party opposing summary judgment that contradicts former deposition testimony of that party may not, without sufficient explanation, create a genuine issue of material fact to defeat the motion for summary judgment." *Id.* at paragraph two of the syllabus.

{¶19} During his deposition, Barnes stated he worked one eight hour shift per week. However, his affidavit states he worked "*no more than one* shift per week," and actually much less than that; "no more than two or three shifts per month" over the last ten years. Barnes specifically averred that in 2007 he worked a total of 21 shifts and in 2008 a total of 20 shifts. On appeal, Barnes explains he was never asked by defense counsel during depositions how many *weeks per year* that he worked, and that had he been asked that question, he would have told defense counsel that he did not work every week.

{¶20} While it is debatable whether this constitutes a sufficient explanation as to the discrepancy between the deposition and affidavit, even assuming Barnes only worked as few as twenty to as many as thirty-six shifts per year over the ten year period as asserted in his affidavit that still constitutes regular use as a matter of law. Although Barnes' use was less frequent than the officer's in *Kenney*, Barnes' use was still greater than the occasional use in *Sanderson*. Significantly, he used a vehicle every time he worked, an undisputed fact determinative of our conclusion that this constitutes regular use as a matter of law.

{¶21} Nonetheless, Barnes asks this court to review case law out of the Sixth District Court of Appeals establishing signposts indicative of the point at which a vehicle has been furnished for regular use. When these signposts "balance in favor of the insured, the vehicle was not provided for 'regular use.' " *Hartman v. Progressive Max Ins. Co.*, 6th Dist. No. WM-05-007, 2006-Ohio-1629; *see also Roeser v. State Farm Ins. Cos.*, 183 Ohio App.3d 168, 2009-Ohio-3395, 916 N.E.2d 533 (6th Dist.). They include: "(1)

whether the vehicle was available most of the time to the insured; (2) whether the insured made more than mere occasional use of the vehicle; (3) whether the insured needed to obtain permission to use the vehicle; (4) whether there was an express purpose conditioning use of the vehicle; and (5) whether the vehicle was being used in an area where its use would be expected." *Hartman* at ¶13.

**{¶22}** However, the majority of these signposts guide towards a conclusion of regular use of the vehicle by Barnes. First, the vehicle, or one of the fleet of police vehicles, was available for Barnes to drive every time he worked. The fact that Barnes was not driving his regularly-assigned cruiser at the time of the collision is immaterial. As the Ohio Supreme Court explained in *Kenney*:

> In order to be excluded under this exclusionary clause, an automobile need not be a single particular automobile regularly furnished to the named insured. Thus it is well settled that an automobile will be excluded under such policy provisions although it is only one of a group of automobile from which an automobile is regularly furnished to the named insured by his employer (citations omitted).

*Kenney* at 134.

**{¶23}** Further, the fact that Barnes did not have the vehicle available for his personal use is not determinative of the issue, as this is common in employment-related cases. *See, e.g., id.*; *Brill v. Progressive Ins. Co.*, 8th Dist. No. 84665, 2005-Ohio-626 (patrol car used by police officer was available for his regular use).

**{¶24}** With regard to the second signpost, Barnes made more than occasional use of the police vehicles; at minimum, even considering his affidavit statement, he used them every time he worked, between 20 to 36 times per year. Third, he was not required to ask specific permission to use the vehicle; rather he routinely drove one while on patrol. Regarding the fourth and fifth signposts, they are not applicable to this situation; his job function was to go out on patrol in a village police vehicle every time he worked.

**{¶25}** This case is factually distinguishable from the *Roeser* case cited by Barnes.

In *Roeser,* the plaintiff was a mechanic at a car dealership and was required occasionally to test drive cars he repaired to verify the work was done properly. While test driving a car for the dealership, he was struck from behind by an uninsured motorist. He made a claim for uninsured motorist benefits under his own personal State Farm policy and was denied coverage by the trial court. Applying the signposts, the Sixth District reversed:

> (1) Neither this vehicle nor any other at the dealership was available to appellant for most of the time; (2) appellant's use of this vehicle or any other was, at best, occasional; (3) appellant's use of this vehicle or any other at the dealership required permission. There is nothing in the record suggesting that appellant had any authority to use any dealership vehicle at will; (4) appellant's use of any vehicle owned by the dealership or its customers was only within the circumscribed scope of his duties as a mechanic; and (5) there is nothing in the record to suggest that appellant was on any frolic or detour for his own purposes. Consequently, none of the five signposts articulated in the controlling precedents of this court points to a conclusion that the vehicle in which appellant was injured had been provided to him for his "regular use."

*Roeser*, 183 Ohio App.3d 168 at ¶22.

{¶26} The situation in *Roeser* is different because the plaintiff there drove the vehicles only occasionally to determine whether they were in working order. This is distinguishable from the present case where Barnes was required to drive a vehicle on patrol the majority of the time while on duty. Barnes' use was more frequent and less limited in scope.

{¶27} In conclusion, Barnes' assignment of error is meritless. The Ohio Supreme Court has held that regular use means use that is frequent, steady, constant or systematic. Barnes' use consistent with either his affidavit or deposition does constitute regular use as a matter of law. Every time he worked he used a police vehicle provided by his employer. Thus, the trial court properly granted summary judgment in favor of

State Farm and its judgment is affirmed.

Donofrio, J., concurs.

Vukovich, J., concurs.