[Cite as *Hollman v. Permanent Gen. Assur. Corp.*, 2019-Ohio-5077.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| CHANEL M. HOLLOMAN, | : | APPEAL NO. C-180692 |
|  |  | TRIAL NO. A-1704449 |
| Plaintiff-Appellant, | : |  |
|  |  |  |
| vs. | : |  |
|  |  | *O P I N I O N.* |
| PERMANENT GENERAL | : |  |
| ASSURANCE CORPORATION, d.b.a. |  |  |
| THE GENERAL, | : |  |
|  |  |  |
| and | : |  |
|  |  |  |
| TRUSTGARD INSURANCE | : |  |
| COMPANY, |  |  |
|  |  |  |
| Defendants-Appellees. | : |  |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: December 11, 2019

*O'Connor, Acciani & Levy* and *Robert B. Acciani*, for Plaintiff-Appellant,

*Reminger Co., LPA*, and *Chad E. Willits*, for Defendant-Appellee Permanent General Assurance Corporation, d.b.a. The General,

*John P. Carlson,* for Defendant-Appellee Trustgard Insurance Company.

**WINKLER, Judge.**

{¶1} Plaintiff-appellant Chanel Holloman appeals the judgment of the trial court granting summary judgment in favor of defendants-appellees Permanent General Assurance Corporation, d.b.a. The General ("The General"), and Trustgard Insurance Company ("Trustgard"). For the reasons that follow, we reverse the trial court's judgment entered in favor of Trustgard, and we affirm the judgment entered in favor of The General.

### Factual Background and Procedural Posture

{¶2} Holloman was injured in a car crash by a car driven by Christopher Hay. Hay was driving a Chrysler Sebring owned by his then-girlfriend Bethany Mathis. Mathis had an insurance policy with The General in which she had insured the Sebring. At the time of the crash, Hay had an auto liability policy with Trustgard. Hay's Trustgard policy listed a 1998 Cadillac Deville as a covered automobile. Hay had sold the Cadillac approximately four months prior to the collision.

{¶3} Holloman received a default judgment against Hay for $25,000. Holloman filed the instant supplemental complaint under R.C. 3929.06 seeking to recover her judgment against Trustgard and The General.

{¶4} Trustgard moved for summary judgment. Trustgard argued that Hay's liability insurance policy was void because he had no insurable interest once he sold the Cadillac. Trustgard also argued that Mathis's car had been available for Hay's regular use, so the regular-use exception in the policy applied, and Trustgard was not obligated to provide liability coverage.

2

{¶5} The General also moved for summary judgment. The General argued that the policy it had issued to Mathis contained a "Restricted Policy Endorsement," which limited coverage to the named insured, which was Mathis. Thus, The General argued that its policy did not extend coverage to Hay as a permissive driver.

{¶6} The trial court granted summary judgment in favor of both Trustgard and The General. This appeal by Holloman ensued.

## Standard of Review

{¶7} Under Civ.R. 56(C), summary judgment is proper when the moving party establishes that "(1) no genuine issue of any material fact remains, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and construing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." *State ex rel. Duncan v. Mentor City Council*, 105 Ohio St.3d 372, 2005-Ohio-2163, 826 N.E.2d 832, ¶ 9, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). However, "a trial court is required to overrule a motion for summary judgment where conflicting evidence exists and alternative reasonable inferences can be drawn." *Baxter v. Reserve Energy Exploration Co.*, 2015-Ohio-5525, 57 N.E.3d 188, ¶ 8 (11th Dist.).

{¶8} We conduct a de novo review of summary-judgment decisions. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8.

**Holloman's Claim against Trustgard**

{¶9} In her first issue presented for review, Holloman argues that the trial court erred in granting summary judgment in favor of Trustgard.

{¶10} Insurance policies are contracts, and the same rules of construction apply. *See World Harvest Church v. Grange Mut. Cas. Co.*, 148 Ohio St.3d 11, 2016-Ohio-2913, 68 N.E.3d 738, ¶ 28. Therefore, " '[w]e look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy.' " *Id.* at ¶ 28, quoting *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256.

{¶11} In Hay's liability insurance policy with Trustgard, Trustgard agreed to "pay damages for bodily injury or property damage for which any insured becomes legally responsible because of an auto accident." An "insured" is defined as "[y]ou * * * for the ownership, maintenance or use of any auto or trailer." The policy also contained an exclusion section, which provided: "We do not provide Liability Coverage for the ownership, maintenance, or use of: * * * (2) Any vehicle, other than your covered auto, which is * * * furnished or available for your regular use."

{¶12} In its motion for summary judgment, Trustgard argued that Hay's policy was void at the time of the accident, because he sold the car covered by the policy—a Cadillac—prior to the accident, and therefore Hay lacked an insurable interest in the policy. *See Phillips v. Cincinnati Ins. Co.*, 60 Ohio St.2d 180, 181, 398 N.E.2d 564 (1979) ("It is a universal rule of insurance law that a person taking out a

policy must have an insurable interest in the subject matter of the insurance; otherwise the policy is void.").

{¶13} In support of its argument, Trustgard cites to *Smith v. Nationwide Mut. Ins. Co.*, 37 Ohio St.3d 150, 153, 524 N.E.2d 507 (1988). In *Smith*, a mother gave her son her car. The son purchased an insurance policy for the car through Nationwide. The son then decided to sell the car, and his mother gave him title to the car, but her signature on the title was never notarized. The son sold the car to the plaintiff, Smith. Smith did not purchase insurance, and no one notified Nationwide that the car had been sold. Smith was injured in a car accident, and he sought underinsured motorist benefits from Nationwide. Nationwide denied Smith's claim because the son did not have an insurable interest in the car. Smith argued that title to the car had never actually passed to him because the son did not have valid legal title to the car when he sold it to Smith. The Ohio Supreme Court determined that Ohio's Uniform Commercial Code governed the ownership issue, so that Smith owned the car at the time of the accident, and Nationwide had no obligation to provide coverage.

{¶14} *Smith* is inapposite factually and legally to this case. *Smith* dealt with whether a person had an insurable interest in a vehicle that had been sold. The issue here is whether Hay's liability coverage extends to a car collision allegedly caused by Hay while he was driving a car other than a covered auto. The liability-coverage section does not limit coverage to a covered auto. Moreover, Trustgard has not pointed to any language in the policy that would support its argument that the policy becomes void upon sale of the covered auto. Therefore, Trustgard's argument that

5

Hay's liability insurance policy became void upon the sale of his Cadillac is contrary to the plain language of the policy.

{¶15} Trustgard argues that even if Hay had an insurable interest, Mathis's car had been available for Hay's regular use, so the policy's regular-use exclusion applied.

{¶16} The phrase "regular use" in an auto liability insurance policy is unambiguous and must be given its ordinary meaning. *Coleman v. Progressive Preferred Ins. Co.*, 1st Dist. Hamilton No. C-070779, 2008-Ohio-3568. "Regular use" means use that is "frequent, steady, constant or systematic." *Sanderson v. Ohio Edison Co.*, 69 Ohio St.3d 582, 589, 635 N.E.2d 19 (1994).

{¶17} The purpose of a regular-use exclusion "is to protect the [insurance] company from a situation where an insured purchases one automobile, acquires liability insurance thereon, and then uses that protection [while] continually operating non-owned vehicles for which no premium has been paid." *Ohio Cas. Ins. Co. v. Travelers Indemn. Co.*, 42 Ohio St.2d 94, 97, 326 N.E.2d 263 (1975).

{¶18} The Sixth Appellate District has developed a list of factors that courts can consider when determining whether a vehicle has been furnished or available for regular use:

(1) whether the vehicle was available most of the time to the insured; (2) whether the insured made more than mere occasional use of the vehicle; (3) whether the insured needed to obtain permission to use the vehicle; (4) whether there was an express purpose conditioning use of the vehicle; and (5) whether the vehicle was being used in an area where its use would be expected.

*Hartman v. Progressive Max Ins. Co.*, 6th Dist. Williams No. WM-05-007, 2006-Ohio-1629, ¶ 13.

{¶19} The Ohio Supreme Court considered whether a vehicle was furnished for the regular use of a live-in boyfriend in *Thompson v. Preferred Risk Mut. Ins. Co.*, 32 Ohio St.3d 340, 513 N.E.2d 733 (1987). The court reasoned that the boyfriend had used the vehicle "on various occasions," but that the girlfriend had maintained sole dominion and control over the vehicle, and that she had the only set of keys. The boyfriend was required to obtain his girlfriend's permission every time he used the vehicle. Thus, the court held that the regular-use exclusion did not apply.

{¶20} In Mathis's recorded statement with an insurance representative shortly after the accident, Mathis indicated that Hay used her car "every day" and that they "shared" it. Hay echoed Mathis's statements in his recorded statement with an insurance representative. Hay indicated that he and Mathis shared the Sebring, and that he had his own set of keys.

{¶21} During her deposition, Mathis presented a different set of facts regarding Hay's use of her Sebring. Mathis testified that Hay could only use her vehicle with permission. Mathis testified that she worked a full-time job and that she would use the car for her transportation to and from work. Mathis stated that once or twice per week, Hay would drop her off at work and take the vehicle. Mathis testified that Hay "occasionally" drove the car to work, but that "90 percent" of the time she would drive Hay to work and pick him up. Mathis stated that Hay did not have his own set of keys, but that Mathis would leave the spare key on a table in their

7

apartment where Hay could access it. Hay sometimes took Mathis's car without permission or without her knowing it.

{¶22} Construing the facts in a light most favorable to Holloman as the nonmoving party, if a factfinder were to believe Mathis's testimony at her deposition, then Mathis's vehicle was not furnished or available for Hay's regular use. Hay did not use the vehicle systematically or frequently, and, like in *Thompson*, Mathis maintained control over Hay's use.

{¶23} Based on the conflicting evidence in the record as to whether Mathis's vehicle was furnished or available for Hay's regular use, a genuine issue of material fact exists.

## Holloman's Claim against The General

{¶24} In Holloman's second issue for review, she contends that the trial court erred in granting summary judgment in favor of The General.

{¶25} Mathis's liability coverage obligated The General to pay compensatory damages on behalf of an "insured" because of an auto accident. The policy defined an "insured" for purposes of liability coverage as "you" or any "insured driver." For purposes of liability coverage, the "restricted policy endorsement" limited the definition of an "insured driver" to "a person specifically identified on the declarations page as an active driver under this policy." Mathis was the only person specifically identified on the policy's declarations page.

{¶26} In its motion for summary judgment, The General argued that Hay was not an "insured driver" under Mathis's policy, and therefore it has no obligation to provide liability coverage for a car accident involving Hays.

{¶27} Holloman argues that Mathis's auto policy was amended by endorsement on December 13, 2011, and that "[n]o documents have been provided concerning policy modifications or changes." Holloman seems to suggest that The General amended Mathis's policy without her consent. This argument is unavailing. The General's interrogatory response indicates that Mathis's policy was amended once to substitute the Sebring for a Toyota Camry. Mathis confirmed this amendment in her deposition. The General filed an authenticated copy of Mathis's policy with its summary-judgment motion, and the December 12, 2011 amendment reflects that the vehicle covered by the policy is a 2005 Chrysler Sebring.

{¶28} Holloman has not pointed to any specific evidence in the record demonstrating a genuine issue of material fact that would call into question the validity of the restricted policy endorsement. *See Dresher v. Burt*, 75 Ohio St.3d 280, 662 N.E.2d 264 (1996). The plain language of the restricted policy endorsement shows that Hay is not an insured under Mathis's policy. As a result, Holloman cannot recover against The General.

{¶29} Therefore, the trial court did not err in granting summary judgment to The General.

## Conclusion

{¶30} We reverse the trial court's judgment entered in favor of Trustgard, and we remand for further proceedings on Holloman's claim against Trustgard. We affirm the trial court's judgment entered in favor of The General.

Judgment affirmed in part, reversed in part, and cause remanded.

**MOCK, P.J.,** and **ZAYAS, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.